<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LNT MERCHANDISING COMPANY, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> DYSON, INCORPORATED, : <br> : <br> Defendant. : <br> : <br> : | **Civil Action No. 08-2883 (SRC)** <br><br> **OPINION** |

<u>**CHESLER**</u>, District Judge

This matter comes before the Court upon the motion to enforce settlement filed by Plaintiff LNT Merchandising Company ("Plaintiff" or "LNT") [docket entry 43]. Defendant Dyson, Incorporated ("Dyson") has opposed the motion. The Court has considered the parties' submissions in connection with this motion. Pursuant to Federal Rule of Civil Procedure 78, it rules on the motion without oral argument. For the reasons that follow, the Court will deny Plaintiff's motion.

**I.     BACKGROUND**

LNT filed this breach of contract action in New Jersey state court on or about April 28, 2008. Dyson removed it to this Court based on the existence of federal diversity jurisdiction, under 28 U.S.C. § 1332. The instant motion seeks to enforce a settlement agreement which

encompasses the claims at issue in this lawsuit.[1]  The facts pertinent to this motion can be briefly summarized as follows:

LNT's claims in the action before this Court stem from Dyson's alleged breach of two contracts - a 2006 Vendor Agreement, the existence of which is disputed by Dyson, and a 2007 agreement entitled "Linens 'n Things Bridal Registry" - based on, among other things, Dyson's alleged failure to ship products ordered by LNT.  This action, however, appears to represent only a portion of the legal and business challenges faced by LNT.  According to LNT's papers, Dyson's Canadian affiliate also breached its own vendor agreement with LNT.  Before the lawsuit before this Court was initiated, Dyson had itself already filed suit against Linens 'n Things, Inc., LNT's parent company, in the Northern District of Illinois alleging breach of a 2003 contract entitled General Terms and Conditions and Sale Agreement based on Linens 'n Things' alleged failure to pay for Dyson products it purchased (the "Illinois action").  On May 2, 2008, LNT and various related companies, including Linens Holding Co. and Linens 'n Things, Inc., filed for Chapter 11 Bankruptcy protection in the United States Bankruptcy Court for the District of Delaware on May 2, 2008.  (When referring to the group of related companies that filed for bankruptcy, the Court will use the term "Linens companies.")  The Illinois action was stayed upon the filing of the bankruptcy action.

---

[1] The Court notes that Dyson has questioned the jurisdiction of this Court to enforce any purported settlement agreement, because it goes beyond the claims and parties before the Court in this action.  Though the Court may not have authority over a non-party, there is no dispute that it has authority over LNT and Dyson, nor is there any dispute that assuming an agreement was entered into, it would bind these parties.  Moreover, "it is widely recognized that courts without jurisdiction to hear certain claims have the power to release those claims as part of a judgment." Grimes v. Vitalink Comm. Corp., 17 F.3d 1553, 1563 (3d Cir. 1994).

In October 2008, shortly after Dyson filed a motion for allowance of its claims in the bankruptcy proceeding, the Linens companies and Dyson began settlement negotiations through their bankruptcy counsel. Though negotiations did not yield a written settlement agreement, LNT claims that Dyson agreed to a settlement and is thus bound by that agreement. Dyson counters that there is no settlement to enforce as the parties contemplated that a written settlement agreement was required to effectuate a settlement.

## II.   DISCUSSION

The Court must analyze this motion according to the legal standard applicable to enforcement of a settlement agreement. Typically, a federal court sitting in diversity must apply the substantive law of the forum state, in this case New Jersey, in deciding questions of the construction and enforcement of contracts, including settlement agreements. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Cooper Labs. v. Int'l Surplus Lines Ins. Co., 802 F.2d 667, 672 (3d Cir. 1986); Excelsior Ins. Co. v. Pennsbury Pain Ctr., 975 F.Supp. 342, 348-49 (D.N.J. 1996). Dyson, however, has raised a potential conflict of laws issue. It argues that Illinois law governs the question of whether a settlement agreement exists, mainly because negotiations occurred between counsel in Delaware and Illinois, which is also Dyson's place of incorporation and principal place of business. A federal court sitting in diversity must also follow the conflict of laws principles of the forum state to determine what law applies to the action's substantive issues. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941); Warriner v. Stanton, 475 F.3d 497, 499-500 (3d Cir. 2007). Thus, the Court must look to New Jersey's choice of law rules to determine whether the law of New Jersey or Illinois applies.

New Jersey has adopted a flexible analysis for resolving choice of law questions in contract actions. Gilbert Spruance Co. v. Pa. Mfrs. Ass'n Ins. Co., 134 N.J. 96, 102 (1993). This approach, based on the Restatement (Second) of Conflicts of Laws § 188, is "focused on determining which state has the most meaningful connections with and interests in the transaction and the parties." NL Indus, Inc. v. Commercial Union Ins. Co., 65 F.3d 314, 319 (3d Cir. 1995); Gilbert Spruance Co., 134 N.J. at 102. Before undertaking a choice of law analysis, however, the Court must determine whether a true conflict exists between the laws of New Jersey and Illinois with regard to the existence and enforceability of a settlement agreement. Lebegern v. Forman, 471 F.3d 424, 428 (3d Cir. 2006). "Under general conflict of laws principles, where the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the Court should avoid the choice-of-law question." Williams v. Stone, 109 F.3d 890, 893 (3d Cir. 1997). If there is no actual conflict, the Court must apply the law of New Jersey. Lebegern, 471 F.3d at 428.

The critical issue before the Court on this motion is whether the parties entered into a settlement agreement. In this case, the Court finds that there is no actual conflict between New Jersey and Illinois law as to this issue. The law of both states applies contract principles in enforcing and construing settlement agreements. Thompson v. City of Atlantic City, 190 N.J. 359, 379, 921 A.2d 427 (2007); Kim v. Alvey, Inc., 322 Ill.App.3d 657, 669 (2001) Accordingly, both New Jersey and Illinois will enforce an oral settlement agreement provided that it has the basic contract formation elements of offer and acceptance of sufficiently definite essential terms, or in other words, mutual assent to the same terms (a "meeting of the minds"). Excelsior Ins. Co., 975 F.Supp. at 348-49 (applying New Jersey law); Pascarella v. Bruck, 190

4

N.J. Super. 118, 124-25 (App. Div. 1983); Kim, 322 Ill App.3d at 669-70.

Applying New Jersey law, the Court finds that, based on the record before this Court, Plaintiff has not demonstrated that the parties entered into an enforceable settlement agreement. The burden is on the moving party to establish that the parties entered into a contract of settlement. Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 475 (App. Div. 1997); see also United States v. Lightman, 988 F.Supp. 448, 458 (D.N.J. 1997) (applying Amatuzzo). In Exelsior Ins. Co., the United States District Court for the District of New Jersey summarized New Jersey contract principles as they apply to determining when the parties have gone beyond negotiations and in fact entered into a binding settlement agreement. Excelsior Ins. Co., 975 F.Supp. at 348-49. The Excelsior court observed:

> Despite these strict requirements [of mutual assent to the same terms and consideration], parties may bind themselves by an informal memorandum, even though they contemplate the execution of a more formal document. If the negotiations are finished and the contract between the parties is complete in all its terms and the parties intend that it shall be binding, then it is enforceable, although lacking in formality and although the parties contemplate that a formal agreement shall be drawn and signed. Thus, so long as the parties agree upon the essential terms of a settlement, leaving the details to be "fleshed out" in a writing thereafter, courts will enforce settlement agreements notwithstanding the absence of a future writing.

Id. at 349 (internal quotations and citations omitted). In this case, it is not clear that there was, in fact, a meeting of the minds as to all essential terms of the parties' compromise and moreover, not clear that Dyson intended to be bound to any settlement absent its expression in a written and executed document.

The parties tell a different story about the progress made in settlement negotiations. According to LNT, the parties reached a verbal settlement on February 17, 2008, agreeing to

5

provide mutual releases covering the breach of contract claims at issue in this lawsuit as well as claims by Dyson on amounts it claimed it was owed by the Linens companies. According to LNT, they also agreed that Dyson would provide LNT with 29.5 % of all amounts it received from a separate dispute between Dyson and CIT (concerning CIT's agreement to purchase Dyson's accounts receivable) and that their settlement would not include a release of LNT's claims for monies it paid to Dyson within 90 days of filing bankruptcy. In writing on February 18, 2009 and orally on February 24, 2009, Dyson's counsel told the Linens companies' counsel that it would send a draft written settlement agreement. LNT claims that rather than send a draft agreement, as promised, Dyson reneged on the settlement. Dyson, on the other hand, denies that it entered into a binding settlement agreement. It asserts that the agreement described by LNT regarded only one term among many that were necessary to settle the parties' dispute. According to Dyson, negotiations as to various crucial terms, such as obligations by the Linens companies to provide financial and factual information relating to its insolvency, were not finalized. Moreover, according to Dyson, the parties contemplated that negotiations on unresolved terms would be finalized through the preparation and editing of a written settlement agreement.

The Court finds that questions of material fact regarding contract formation preclude an order enforcing the settlement. One question is whether the parties intended to be bound by a verbal agreement or, rather, whether it was their expectation that no binding contract would exist until a written settlement agreement had been reviewed, agreed to and executed by the parties. Here, there is evidence that Dyson contemplated that a written agreement was essential to the formation of a settlement contract. Another question is whether there was a meeting of the minds between the Linens companies and Dyson with regard to settlement. Dyson has submitted

evidence that the parties did not give their mutual assent to all terms essential to a compromise of their dispute, which includes but is not limited to the claims at issue in this lawsuit. In short, the Court finds that LNT has not met its burden of demonstrating that the parties entered into a contract of settlement.

Accordingly, the instant motion to enforce settlement will be denied.

## III.   CONCLUSION

For the foregoing reasons, LNT's motion to enforce settlement will be denied. An appropriate form of Order will be filed herewith.

                                                    s/Stanley R. Chesler
                                                    STANLEY R. CHESLER
                                                    United States District Judge

DATED: July 21, 2009